**NEW ENGLAND GLASS CO. (MAGOUN v.).** See Case No. 8,960.

**NEW ENGLAND INS. CO. (BAXTER v.).** See Case No. 1.127.

---

## Case No. 10,154.

NEW ENGLAND INS. CO. et al. v. DETROIT & C. STEAM NAV. CO.

[13 Int. Rev. Rec. 94; 10 Am. Law. Reg. (N. S.) 383.]

District Court, N. D. Ohio. 1871.

JURISDICTION OF FEDERAL COURTS IN ADMIRALTY CASES — RESIDENTS OF OTHER DISTRICTS — ATTACHMENT OF · PROPERTY — SUPREME COURT RULES.

[1. A libel in personam to recover damages for a collision is a "civil suit," within the meaning of the judiciary act of 1789. § 11 (1 Stat. 78), and hence the court in which the suit is brought cannot obtain jurisdiction, as against an actual resident of another district, by an attachment of his property; nor has the act of 1789 been modified in this respect by the acts of 1792 and 1842. which only regulate the exercise of existing jurisdiction, and do not alter or enlarge the same. Distinguishing Manro v. Almeida, 10 Wheat. (23 U. S.) 473.]

[2. The acts of 1792 (1 Stat. 275) and 1842 (5 Stat. 510) conferred no power upon the supreme court to alter or enlarge, by its rules, the jurisdiction of the federal courts in respect to non-residents of the district in which the suit is brought.]

[This was a libel in personam by the New England Insurance Company and others against the Detroit & Cleveland Steam Navigation Company to recover damages occasioned by a collision. Heard upon a plea to the jurisdiction.]

SHERMAN, District Judge. The libel was filed in this case to recover the damages caused by the collision of the steamboat Morning Star and the bark Cortlandt, on Lake Erie, in the month of June, 1868. The usual process was issued from this court and returned by the marshal, that the respondents were not found; that he had attached one of its steamboats lying in the harbor of Cleveland. Under a stipulation entered into by the parties, both a plea to the jurisdiction and an answer to the merits were filed; but the answer was not to conclude the respondents from all advantages they might derive from the plea to the jurisdiction. The case was presented at this term upon the questions arising upon the plea. On the part of the respondents it is insisted that this court has no jurisdiction of the cause, be-

cause the respondent was not an inhabitant of the Northern district of Ohio, nor found therein; but was an inhabitant of the Eastern district of Michigan. The libellants claim that it is according to the long and well-established practice of courts of admiralty to proceed against a respondent by attachment of his goods, if he cannot be found within the jurisdiction of the court to be served with process; that when congress, by the act of 1789 [1 Stat. 93], established courts of admiralty, and gave them "cognizance of all civil causes of admiralty and maritime jurisdiction," and provided that the forms and modes of proceedings in causes of admiralty and maritime jurisdiction shall be according to the course of the civil law, they sanctioned the usual modes of obtaining jurisdiction for the recovery of a demand, which is in its nature cognizable in those courts; that this is confirmed by the act of congress passed May 8, 1792 [1 Stat. 275], and also by the act of August 23, 1842 [5 Stat. 516], and by the authority of these statutes the supreme court provided by rule No. 2 in admiralty for the issuing and service of mesne process in suits in personam, by virtue of which the process in this case was issued.

The case, therefore, presents the important question whether a court of admiralty can obtain jurisdiction against an inhabitant of another district, in a maritime cause, by an attachment of his property. The question is not affected by the fact that the respondents are a corporation. For the purposes of this case. a corporation must be deemed an inhabitant of the state in which it is created and doing business, and it is as clearly within the reason of the rule, regulating jurisdiction over inhabitants, as a natural person. I, therefore, treat the question precisely as I should if the respondent were a natural person, an inhabitant of the state of Michigan, sued in the Northern district of Ohio by attachment of his property, and not found, nor served with process. In addition to the statutes above-named, the libellants cite in support of their position the case of Manro v. Almeida, 10 Wheat. [23 U. S.] 473, and a number of other cases founded upon that decision. As that was the only case upon which the question appears to be raised and passed upon in the supreme court, and as the decision of that court is conclusive upon me, if applicable to this case, it is proper for me to examine it and ascertain the precise extent of the decision. The libel was filed in the district of Maryland against Almeida, charging him with having committed a tort on board of a certain vessel off the Capes of the Chesapeake, taking therefrom $5,000 in specie and converting it to his own use. It appears from the statement of the case that Almeida resided in the district of Maryland, but had absconded therefrom and fled beyond the jurisdiction of the court, and that the libellant had no means of redress except by process of attachment against his

goods within the district. The goods were attached by the marshal, and a copy of the monition was left at the late dwelling of Almeida. Upon demurrer to the libel the case came to the supreme court and was there decided. The decision establishes the general principle that in a suit in personam against a former inhabitant of the district who had absconded or concealed himself, the district court as a court of admiralty, had power to issue process of attachment to compel his appearance. Other cases cited by the libellants support and confirm this principle, and some of them extend it to cases against aliens not found in the district, but having property there, which can be attached. These cases all affirm the doctrine that courts of admiralty always possessed the power to issue process of attachment and still maintained and asserted it, as a means to compel absent respondents under certain circumstances to appear and answer. But these decisions are not applicable to the case before me. These respondents claim that, being in a legal sense, inhabitants of the state of Michigan, they could not be sued in the Northern district of Ohio by process of attachment and seizure of their property. That they were not alien, non-residents, nor were they ever inhabitants of this district, and had absconded or concealed themselves, and therefore not within the rules laid down in those cases.

The question then recurs upon the provisions of the acts of congress and the second rule in admiralty. The judiciary act of September, 1789 [1 Stat. 73], establishing the judicial tribunals, defines their location, distributes and limits their jurisdiction and the manner of its exercise. The first eight sections provide for the organization of the supreme, circuit, and district courts, the division of the country into circuits and districts, and appointments of clerks and other officers. The 9th section defines the jurisdiction of the district courts. First, of certain "crimes and offences;" next, they shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including seizure under laws of import as well as seizure on land and all suits for penalties and forfeitures under the laws of the United States, and shall have concurrent jurisdiction with the circuit courts, when an alien sues for a tort, and also suits against consuls, etc. The 11th section provides the jurisdiction of the circuit court, and provides that it shall have original cognizance of all suits of a civil nature in common law or equity, when the sum exceeds $500 and the United States or an alien is a party, or the suit is between citizens of different states, and concurrent jurisdiction with the district courts of all crimes and offences against the laws of the United States. Then follow in the same section these two provisions: "But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court. And no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he may be found at the time of the serving of the writ." It may be added that the constitution of the United States provides that the trial of all crimes shall be held in the state and district where the crime shall have been committed. The object of these provisions is clear. It is to prevent citizens of one state from being compelled to go to a distant state to defend themselves from criminal prosecutions, or against a civil suit. At the time of enactment of these provisions, congress was in the very act of framing a judicial system, providing for the organization of courts, to be held in each state, thus bringing the federal court within reach of every citizen. As these courts were acting, not under local authority, but derived their powers from a government embracing the whole country, it might well have been concluded that their powers were ample to send process and compel the appearance of defendants residing in any state, however remote. But, congress, by the provisions of the 11th section, prevented any such construction of their powers and thereby prohibited any of the federal courts to issue process and enforce the appearance of a citizen only in the district in which he is an inhabitant or in which he may be found at the time of the service of the writ. That in actions at common law or in equity, a party cannot proceed by attachment and so obtain jurisdiction of a person who is an inhabitant of another district, is well settled. It is also clear that the federal courts cannot send their process into another district in suits at common law or in equity, and thereby obtain jurisdiction of the person. I do not understand the libellant to controvert those propositions. They are settled by numerous authorities. Among them I cite Picquet v. Swan [Case No. 11,-134]; Toland v. Sprague, 12 Pet. [37 U. S.] 300; Ex parte Graham [Case No. 5,657]; Day v. Newark India-Rubber Co. [Id. 3,685], which applies the principle to a corporation created by the laws of another state. If then this is a civil suit within the meaning of the 11th section of the judiciary act, there is an end of the question, and jurisdiction of the case cannot be acquired by attachment of property. In the 9th and 11th sections, conferring jurisdiction upon the circuit and district courts, congress had spoken of "crimes and offences," "civil causes of admiralty and maritime jurisdiction," "suits for penalties and forfeitures," "causes when an alien sues for a tort," "suits against 'consuls,'" "suits of a civil nature at common law and in equity," and declares that no "civil suit" shall be brought, etc.

A "civil cause of admiralty and maritime jurisdiction" is prosecuted by a suit. It is within the clause, as clearly as a "cause when an alien sues for a tort." It is not

necessary and not usual in a statute to recite in a restrictive clause again the several terms previously embraced in the same section. The suits that are recited are all civil in their nature. A cause in admiralty is so expressly described—it is called a "civil cause." The term "civil suit" was an apt and proper term, to describe all these actions and causes of actions. The constitution provided that all criminal prosecutions should, be tried in the district where the crime was committed. Congress provided by this section that civil suits should be placed in the same position, and only be brought in the same district where the person sued was an inhabitant. The intention was, in using the term "civil suit," to distinguish it from a criminal cause, and to give as full and complete protection against suits brought against residents in distant districts in the one case as in the other. The restriction, therefore, made the judicial system and the jurisdiction of the courts consistent and complete. This construction does not deny the original and present powers of admiralty courts to issue the process of attachment when the respondent is an alien non-resident, nor, when an inhabitant, he absconds or conceals himself; but it restricts and prohibits such process to be issued when the respondent is an actual inhabitant of another district.

The libellants further claim that the acts of congress of 1792 and 1842, regulating the practice of the courts, are in such terms that they, and the second rule of the supreme court in admiralty, have modified the judiciary act of 1789, limiting jurisdiction in this respect. In answer to this, it is sufficient to say that the supreme court in Toland v. Sprague, 12 Pet. [37 U. S.] 300, expressly decided that these acts are not designed to alter or enlarge the jurisdiction of the courts, but only to regulate the exercise of jurisdiction where it exists. It may be added that if these acts are held to authorize the supreme court, by rule, to abrogate the restriction in the 11th section of the act of 1789, in any respect, it cannot be confined to the jurisdiction of courts of admiralty; for the act of 1842 gives the same power touching proceedings at common law and in equity, as in admiralty. If that construction is correct it enables the supreme court to repeal, by rule, all the restrictions contained in the act of 1789, on this subject, and to authorize common law actions against the inhabitants of any state, to be brought in any other district in the United States.

In support of these views the counsel for the respondents cite the written opinion of Judge McLean, given in Chicago in 1860, in the case of —— v. Western Transportation Company, and not reported. The facts were substantially the same in that case as in this, and he dismissed it for want of jurisdiction. His opinion, until reversed, is the law of this circuit and should be decisive of the question raised here. The opinion of Judge Woodruff, the circuit judge of the Second circuit,

in the late case of Atkins v. Fiber Disintegrating Company [Case No. 602], decided in January, 1871, and reversing the judgment of Judge Benedict, as reported in [Id. 600], takes the same view of the question. The opinions of Judges McLean and Woodruff embody many of the views I have suggested, and very ably, I think, present the reasons and considerations pertinent to the subject, with the authorities. I am compelled to concur with the conclusions of those judges, and to hold that the jurisdiction of the defendants in this case was not acquired by this court by the attachment. The plea to the jurisdiction is sustained—the libel dismissed.

NEW ENGLAND INS. CO. (WILLIAMS v.). See Case No. 17,731.

NEW ENGLAND MARINE INS. CO. (HAZARD'S ADM'R v.). See Case No. 6,282.

NEW ENGLAND MARINE INS. CO. (MAGOUN v.). See Case No. 8,961.

NEW ENGLAND MUT. INS. CO. (DUNHAM v.). See Case No. 4,152.

NEW ENGLAND MUT. LIFE INS. CO. (ARTHUR v.). See Case No. 565.